**RECEIVED**

FEB **2 1** 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Wang Dan and Wang Juntao,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　Case No. 1: 05CV01788 (Judge R.M. Urbina)
　　　　　　　　　　　　　　　　　)
Hu Jintao, Liu Aicheng,　　　　　　)
*People's Daily* and *Global Times*,　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　)


**SUGGESTION BY CHINESE SOCIETY OF PRIVATE
INTERNATIONAL LAW UNDER FED. R. CIV. P. 12(h)(3)
<u>OF LACK OF SUBJECT-MATTER JURISDICTION OVER DEFENDANTS</u>**


Chinese Society of Private International Law
c/o International Law Institute of Wuhan University
Wuhan University
Wuhan, Hubei Province
　　　　People's Republic of China

<u>December 4, 2006</u>

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

I.    THE COURT HAS A DUTY TO EXAMINE ITS
      SUBJECT-MATTER JURISDICTION ............................................................. 1

II.   PRESIDENT HU JINTAO IS IMMUNE ......................................................... 3

III.  *RENMIN RIBAO* IS IMMUNE ....................................................................... 4

      A.    *Renmin Ribao* Is a "Foreign State" Entitled to Immunity Under the FSIA .......... 4

      B.    None of the FSIA's Exceptions to Immunity Apply ........................................ 7

            1.    The Exception to Immunity in 28 U.S.C. § 1605(a)(5)
                  Does Not Apply ....................................................................... 7

                  a.    All of the Claims Arise Out of Alleged Libel ............................... 8

                  b.    The Entire Tort Did Not Occur in the United States ................. 10

            2.    The Commercial Activities Exception Does Not Apply ...................... 13

IV.   LIU AICHENG IS IMMUNE ....................................................................... 17

V.    NO JURISDICTION EXISTS OVER *GLOBAL TIMES* ............................... 18

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

Page

CASES

*Adler v. Fed. Republic of Nigeria,* 107 F.3d 720, 726 (9th Cir 1997) ......................................... 15

*Arcaya v. Estrada,* 24 Fed. Rules Serv. 158 (S.D.N.Y. 1957) ....................................................... 1

*Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428 (1989) ........................... 5, 7

\* *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517 (D.C. Cir. 1984),
    *cert. denied,* 470 U.S. 105 (1985) ................................................................................. 10

*Bancoult v. McNamara,* 370 F. Supp. 2d 1 (D.D.C. 2004), *aff'd,* 445 F.3d 427
    (D.C. Cir. 2006) .................................................................................................... 17

\* *Blumenthal v. Drudge,* 992 F. Supp. 44 (D.D.C. 1998) ................................................ 11, 12, 13

*Bryks v. Canadian Broadcasting Corp.,* 906 F. Supp. 204 (S.D.N.Y. 1995) ............................ 14

*Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 86 F. Supp. 2d 244
    (S.D.N.Y. 2000), *rev'd on other grounds,* 251 F.3d 334 (2d Cir. 2001) ........................... 7

*Citibank Int'l v. Collier-Traino, Inc.,* 809 F.2d 1438 (9th Cir. 1987) ........................................... 1

*Doe v. Israel,* 400 F. Supp. 2d 86 (D.D.C. 2006) ...................................................................... 17

*El-Fadl v. Central Bank of Jordan,* 316 U.S. App. D.C. 86, 75 F.3d 668 (D.C. Cir. 1996) ...... 17

*El-Hadad v. United Arab Emirates,* 216 F.3d 29 (D.D.C. 2000) ............................................... 14

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,*
    62 U.S. 611 (1983) ............................................................................................... 19

*Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438 (D.C. Cir. 1990) ............. 19

*Frolova v. USSR,* 761 F.2d 370 (7th Cir. 1985) ...................................................................... 10

*Garb v. Republic of Poland,* 440 F.3d 579 (2d Cir. 2006) ......................................................... 15

*Gardner v. United States,* 213 F.3d 735 (D.C. Cir. 2000) ........................................................... 9

\* *Greene v. Nguyen,* 2005 U.S. Dist. LEXIS 19984 (D.D.C., Sept. 7, 2005) ................................. 9

*Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir.), *cert. denied*, 493 U.S. 891 (1989)............ 10, 16

*Hanil Bank v. Pt Bank Negara Indonesia (Persero),* 148 F.3d 127 (2d Cir. 1998) ................... 15

*Int'l Ass'n of Machinists & Aerospace Workers v. Organization of
Petroleum Exporting Countries (OPEC)*, 477 F. Supp. 553
(C.D. Cal. 1979), *aff'd*, 649 F.2d 1354 (9th Cir. 1981).).................................................... 5

*Jungquist v. Sheikh Sultan bin Khalifa al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997)................. 17

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................. 17

*Kline v. Williams*, 2006 U.S. Dist. LEXIS 23263 (D.D.C. 2006) ............................................... 13

*Koch v. United States*, 209 F. Supp. 2d 89 (D.D.C. 2002) ............................................................ 9

*Kozorowski v. Russian Federation*, 1997 U.S. App. LEXIS 26266
(9th Cir., Sept. 19, 1997) ............................................................................... 9, 10

*Kugel v. United States*, 292 U.S. App. D.C. 135, 947 F.2d 1504 (D.C. Cir. 1991) ..................... 9

*Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265
(D.D.C. 1998) ...................................................................................................... 13

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996)............................................... 11

*Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986)........................ 11, 19

*Neely v. Philadelphia Inquirer Co.*, 62 F.2d 873 (D.C. Cir. 1932) ............................................ 19

*Oster v. Dominion of Canada*, 144 F. Supp. 746 (S.D.N.Y. 1956), *aff'd sub nom.
Clay v. Dominion of Canada* (2d Cir. 1956), *cert. denied*, 353 U.S. 936 (1957)............. 1

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) ....................................... 10

*Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006) ............................................................... 18

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ........................................................................... 15

*Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005), *cert. denied*,
164 L. Ed. 2d 515 ( 2006)................................................................................... 18

*The Schooner Exchange v. M'Faddon*, 7 Cranch 116 (1812)....................................................... 5

*Truman v. United States*, 26 F.3d 592 (5th Cir. 1994). ............................................................... 9

*United States v. Shearer*, 473 U.S. 52, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985)........................ 9

* *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ......................................... 5, 19

* *Wang Bingzhang v. Renmin Ribao*, (Sup. Ct. D.C., Civil Action No. CA-8645-85,
   *dismissed*, Feb. 11, 1988) ...................................................................................... *passim*

*Wei Ye v. Jiang Zemin*, 383 F.3d 620 (7th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005)............ 4

*Yessenin-Volpin v. Novosti Press Agency*, 443 F. Supp. 849 (S.D.N.Y. 1978).................... 15, 16

*Youming Jin  v. Ministry of State Security*, 254 F. Supp. 2d 61 (D.D.C. 2003) ........................... 2


STATUTES AND RULES

Federal Tort Claims Act, 28 U.S.C. § 2680(h) ................................................................. 8, 9, 17

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611 .................. *passim*

28 U.S.C. § 1330(a) ........................................................................................................... 5

28 U.S.C. § 1332(c) ........................................................................................................... 5

28 U.S.C. § 1332(d) ........................................................................................................... 5

28 U.S.C. § 1603 ........................................................................................................... 5, 6

28 U.S.C. § 1603(a) ........................................................................................................... 5

28 U.S.C. § 1603(b) ........................................................................................................... 5

28 U.S.C. § 1605 ......................................................................................................... 13, 15

28 U.S.C. § 1605(a)(2) ............................................................................................ 14, 15, 16

28 U.S.C. § 1605(a)(5) ....................................................................................... 7, 10, 13, 14, 17

28 U.S.C. § 1605(a)(5)(A) ............................................................................................... 8, 10

28 U.S.C. § 1605(a)(5)(B) ..................................................................................... 8, 9, 10, 13, 14

D.C. Code § 13-423(a).................................................................................................... 12, 13

D.C. Code § 13-423(a)(3)..................................................................................................... 12

D.C. Code § 13-423(a)(4) ............................................................................................. 12

Fed. R. Civ. P. 12(h)(3) ......................................................................................... *passim*

## MISCELLANEOUS

H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S. Code Cong. &
       Admin. News 6604 ........................................................................... 8, 10, 15, 17

S. Rep. No. 1310, 94th Cong., 2d Sess. (1976) ............................................. 8, 10, 15

"Taiwan Leader Suspected of Graft Wins Vital Support From Party,"
       New York Times, Nov. 9, 2006, at A13 ............................................................ 3

The Chinese Society of International Law hereby suggests to the Court that, pursuant to Fed. R. Civ. P. 12(h)(3), the Court lacks subject-matter jurisdiction with respect to defendants President Hu Jintao, Liu Aicheng, *People's Daily* and *Global Times*.

I.    THE COURT HAS A DUTY TO EXAMINE ITS SUBJECT-MATTER JURISDICTION.

> Rule 12(h)(3) provides:
>
> Whenever it appears by suggestion of the parties <u>or</u> <u>otherwise</u> that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

(Emphasis added)

Given the critical importance of subject-matter jurisdiction, a nonparty may challenge a district court's lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir. 1987); *Wang Bingzhang v. Renmin Ribao ("People's Daily")*, (Sup. Ct. D.C., Civil Action No. CA-8645-85, Feb. 11, 1988); *Arcaya v. Estrada*, 24 Fed. Rules Serv. 158 (S.D.N.Y. 1957); *Oster v. Dominion of Canada*, 144 F. Supp. 746 (S.D.N.Y. 1956), *aff'd sub nom. Clay v. Dominion of Canada* (2d Cir. 1956), *cert. denied*, 353 U.S. 936 (1957). If the Court determines that it lacks subject-matter jurisdiction over a given defendant, it must dismiss the case as to that defendant forthwith.

The submitter of this suggestion of immunity is not a party to this litigation. It is an academic society, formed under China's Regulations on the Registration of Corporations, and dedicated to research and discussion of private international law issues. It is interested in the law and theories of head-of-state immunity and foreign sovereign immunity and also in the furtherance of amicable relations between China and the United States; and has been following this case in view of the foreign sovereign immunity issues it raises and in view of its potential effects on Sino-U.S. relations. The Society has also submitted suggestions of lack of subject-matter

1

jurisdiction to this Court in *Youming Jin v. Ministry of State Security*, Civil Action No. 02-0627 (RMU) (docket items ##70 and 78, filed July 12, 2005 and February 10, 2006 respectively).  The Society is now submitting this suggestion *pro se* in this case to assist the Court with the subject-matter jurisdiction issues, as permitted by Rule 12(h)(3).

The defendants in this case are the head of state, President Hu Jintao of the People's Republic of China; *People's Daily* (whose Chinese name is *Renmin Ribao*), a state agency of the PRC, official organ of the Central Committee of the Chinese Communist Party; Liu Aicheng, the former chief correspondent in Washington, DC of *People's Daily*; and *Global Times* (whose Chinese name is *Huanchiu Shibao*).

The plaintiffs in this case are Chinese citizens residing in California (Wang Dan, Complaint ¶ 8) and New Jersey (Wang Juntao, *id.* ¶ 9).  They allege that false and defamatory statements concerning them were published in the *Global Times*, a newspaper that is sold in China only, on May 28, 2004[1] and June 3, 2005, and that these allegedly false and defamatory statements were also posted on the website of the *People's Daily* on the same day that these statements were published in "hard copy" in the *Global Times* in China.  Complaint ¶¶ 21-24.  The complaint also alleges, in conclusory fashion, that these statements were part of a "campaign of denunciation and defamation . . . organized by and conspired in, and jointly or severally launched by the above-referenced Defendants."  *Id.* ¶ 27.

Three causes of action are asserted, all arising out of alleged libel.  The first alleges "false and defamatory" statements printed in *Global Times* and posted on the *People's Daily* website, *see id.* ¶¶ 31, 32, 34-37, which "falsely held out [plaintiffs] to be enemies of the Chinese people

---

[1]    Actually, the claims insofar as they are based on the May 28, 2004 publication are time-barred.  *See Youming Jin v. Ministry of State Security*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (enforcing one-year limitations period, to which "District of Columbia courts adhere strictly").

working for Taiwan authorities intent on severing Taiwan from Mainland China." *Id.* ¶ 39; *see also id.* ¶¶ 45, 48. These statements were alleged to constitute "malicious, wrongful and negligent acts," such that the defendants are liable for compensatory damages of $3 million. *Id.* ¶¶ 39-41. The second cause of action alleges that these same "false and defamatory" statements, *see id.* ¶¶ 43, 44, alternatively constitute "intentional, deliberate and reckless acts," and as a result defendants are liable to plaintiffs for punitive damages of $9 million. *Id.* ¶ 46. The third cause of action alleges that the same "false and defamatory" statements, *id.* ¶ 48, held "[p]laintiffs out to the public in a false light," and as a result defendants are liable for $3 million in compensatory damages. *Id.* ¶ 49.

**Solely** for the purpose of analyzing the Complaint in relation to the applicable U.S. jurisdictional principles, it is assumed here that the statements of which plaintiffs complain are false and defamatory. It is beyond the purview of this suggestion to set the record straight as to the actual facts concerning the statements made.[2] The purpose of this suggestion is simply to show that there is no jurisdiction, even if it is assumed (solely for the purposes of argument) that the statements in question were false and defamatory.

## II.     PRESIDENT HU JINTAO IS IMMUNE.

The Ministry of Foreign Affairs of the People's Republic of China, in a paper presented to the U.S. Department of State, entitled "Position of the Chinese Government on the Unwarranted Lawsuit Filed by Wang Dan And Wang Juntao" ("Chinese Government Position") (Attachment 1),

---

[2]     However, since the filing of the complaint, it has become a matter of public record that, contrary to the allegations of the complaint, plaintiff Wang Dan has been receiving payments from the authorities on Taiwan. This has come out in the recent flap over allegations of graft by Chen Shui-bian of Taiwan. *See, e.g.*, "Taiwan Leader Suspected of Graft Wins Vital Support From Party," New York Times, Nov. 9, 2006, at A13. In the wake of Chen Shui-bian's claim that he used missing funds to pay persons such as Wang Dan, Wang Dan has now admitted that he was paid by Taiwan, and has attempted to provide an "explanation" for that. *See* http://www.peacehall.com/news/gb/party/2006/11/200611071343.shtml. *See also* http://www.zonaeuropa.com/20061111_2.htm

has pointed out that "[t]he head of state, being the highest representative of a state both internally and externally, enjoys absolute jurisdictional immunity," and that this is based on a principle of customary international law even older than the principle of sovereign immunity. The United States has forcefully agreed with the Chinese Government, and has asserted head-of-state immunity on behalf of President Hu Jintao. *See* Suggestion of Immunity Submitted by the United States of America, filed Oct. 19, 2006. The Court must recognize this immunity, and must dismiss the case as to President Hu Jintao. As stated in *Wei Ye v. Jiang Zemin*, 383 F.3d 620, 626 (7th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005), "[t]he obligation of the Judicial Branch is clear--a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff." *See generally* Suggestion of Immunity Submitted by the United States of America, filed Oct. 19, 2006.

III.    *RENMIN RIBAO* IS IMMUNE.

    A.    *Renmin Ribao* Is a "Foreign State" Entitled to Immunity Under the FSIA.

The Defendant *People's Daily* (whose Chinese name is *Renmin Ribao*) is the official voice of the Central Committee of the Chinese Communist Party. Complaint ¶ 3. It is an organ of the Chinese state. As stated in the Chinese Government Position:

> The *People's Daily* is a State agency of China and its property is owned by the State. Its funding is covered by the State budget. Its main functions include releasing State and government documents, news and government views and publicizing information of the State.

4

As a consequence of its status, under the applicable U.S. law, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-1611, *Renmin Ribao* constitutes a "foreign state" under 28 U.S.C. § 1603.[3] *See* Complaint ¶ 11 (alleging jurisdiction under the FSIA).

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country" [*i.e.*, the United States]. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, a foreign state will be immune from the jurisdiction of United States courts unless one of the specified exceptions to immunity set forth in the FSIA applies to the subject matter of the case. *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-489 (1983). *See* 28 U.S.C. § 1330(a) (court has subject-matter jurisdiction <u>only if</u> the foreign state is <u>not</u> entitled to immunity). "[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still <u>must</u> determine that immunity is unavailable under the Act." *Id.* at 494 n.20 (emphasis added).[4] *See, e.g., Int'l Ass'n of Machinists & Aerospace Workers v. Organization of Petroleum Exporting Countries (OPEC)*, 477 F. Supp. 553 (C.D. Cal. 1979) (refusing to enter default judgment and dismissing for lack of jurisdiction under the FSIA), *aff'd on alternate ground*, 649 F.2d 1354 (9th Cir. 1981).

---

[3]     Under 28 U.S.C. § 1603(a), "[a] 'foreign state,' except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Under 28 U.S.C. § 1603(b), "[a]n "agency or instrumentality of a foreign state" means any entity-- (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title [28 U.S.C.] nor created under the laws of any third country."

[4]     The FSIA codifies the "restrictive" theory of foreign sovereign immunity. Under the absolute theory of foreign sovereign immunity, which Chief Justice John Marshall enunciated as a rule of international law in *The Schooner Exchange v. M'Faddon*, 7 Cranch 116 (1812), the courts of one state have no jurisdiction at all over another state. This suggestion analyzes the case before this Court in terms of the restrictive theory as set forth in the FSIA, since it is our understanding that in U.S. jurisprudence a U.S. court may be required to apply U.S. law even if that law is in violation of international law.

Apparently recognizing that none of the FSIA's' exceptions to immunity apply to their case (as we demonstrate below) and that the case must therefore be dismissed, plaintiffs claim that "the Chinese Communist Party and its politburo, like its propaganda Department and its subsidiary entities like the '*People's Daily*' are not sovereign entities. Hence it is clear that the sovereign immunity defense may not legitimately be invoked." Complaint ¶ 29. Plaintiffs' claim is, however, flatly incorrect. In fact, as the Chinese Government Position observes, almost two decades ago the Superior Court of the District of Columbia already examined the characteristics of the Chinese state and determined that *Renmin Ribao* is in fact a "foreign state" under 28 U.S.C. § 1603, in *Wang Bingzhang v. Renmin Ribao*, Sup. Ct. D.C., Civil Action No. CA-8645-85.

Similarly to the instant case, in *Wang Bingzhang* the plaintiffs alleged that they had been libeled by an article on their ties to Taiwan.[5] The article appeared in *Renmin Ribao*, copies of which was circulated in the District of Columbia. Plaintiffs in that case argued, as do plaintiffs here, that *Renmin Ribao* did not enjoy foreign sovereign immunity because, they claimed, it was an organ of the Chinese Communist Party and for that reason was not a "foreign state" as that term in defined in the FSIA. The Superior Court, recognizing that the People's Republic of China is a socialist state under the leadership of the Chinese Communist Party, rejected this argument; accepted for consideration the suggestion of a non-party that *Renmin Ribao* is a "foreign state" and therefore immune; and ruled that *Renmin Ribao* is in fact a "foreign state" under the FSIA. *Wang Bingzhang*, Memorandum Order of Nov. 10, 1987 at 7, 26-28 (Attachment 3). *See also id.* at 2-6. The Superior Court went on to dismiss the case as to *Renmin Ribao* (and also as to the officials of *Renmin Ribao* who had been named as defendants) for lack of subject-matter jurisdiction, since

---

[5]     The complaint in the *Wang Bingzhang* case is attached as Attachment 2.

*Renmin Ribao* is a "foreign state" and none of the FSIA's exceptions to immunity applied in the case. *Wang Bingzhang*, Order of Feb. 11, 1988 at 2 (Attachment 4).

The Superior Court's determination that *Renmin Ribao* is a "foreign state" is clearly correct. As the Chinese Government Position noted, *Renmin Ribao* is a state agency. *See also Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 86 F. Supp. 2d 244, 254 (S.D.N.Y. 2000) ("The People's Daily is published by the Chinese Communist Party's Central Commission, and it 'is deemed to be authoritative and representing the official opinion of the Chinese Government.' Haoling Decl. P 2. In other words, there is little risk that a government controlled newspaper such as the *People's Daily* would inaccurately reflect the official position of its government."), *rev'd on other grounds*, 251 F.3d 334 (2d Cir. 2001).

B.    None of the FSIA's Exceptions to Immunity Apply.

A "foreign state" is immune, and the Court lacks jurisdiction, unless the claims asserted fit within at least one of the specified exceptions to immunity set forth in the FSIA. There are no exceptions to this rule. Thus, even in cases where violations of international law are alleged, immunity is granted if the alleged violations "do not come within one of the FSIA's exceptions." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 436 (1989). The claims alleged by plaintiffs in this case come within none of the exceptions. Therefore, no jurisdiction exists.

1.    The Exception to Immunity in 28 U.S.C. § 1605(a)(5) Does Not Apply.

The tort-in-the-U.S. exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(5), provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> * * *

7

> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>
> > (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
> >
> > (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

Subsections 1605(a)(5)(A) and (B) contain "exceptions to the exception" to immunity for torts committed in the United States. These exceptions parallel the exceptions found in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(h), from which they were borrowed into the FSIA. *See* H.R. Rep. No. 1487 at 20-21, *reprinted in* 1976 U.S. Code Cong. & Ad. News at 6620; S. Rep. No. 1310 at 20.

### a.    All of the Claims Arise Out of Alleged Libel.

The first and second causes of action against *Renmin Ribao* are unambiguously for libel. Thus, these two claims fall within the jurisdictional bar of 28 U.S.C. § 1605(a)(5)(B), which specifically bars claims arising out of libel.

The third cause of action, for "false light," is also barred by § 1605(a)(5)(B). That is because the "false light" claim "arises out of" alleged libel. *See* 28 U.S.C. § 1605(a)(5)(B) "<u>arising out of</u> . . . <u>libel</u>, slander, misrepresentation, deceit, or interference with contract rights") (emphasis added); Complaint ¶¶ 48-49 (the false and defamatory statements allegedly put plaintiffs in a false light).

As noted above, the exceptions found in 28 U.S.C. § 1605(a)(5)(B) were borrowed from the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(h), into the FSIA, making FTCA cases

relevant in deciding FSIA questions.  A recent case in this Court shows that a false light claim arising out of defamation is barred in FTCA cases:

> One exception to the FTCA's sovereign immunity waiver is the intentional-torts exception, which provides that the United States retains sovereign immunity for any "claim[s] arising out of assault, battery, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h). Given its "sweeping language," the exception excludes claims that sound in negligence but "arise out of" an intentional tort. *Kugel v. United States*, 292 U.S. App. D.C. 135, 947 F.2d 1504, 1507 (D.C. Cir. 1991) (*quoting United States v. Shearer*, 473 U.S. 52, 55, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985)).

* * *

> Among the claims excepted from the FTCA's waiver of sovereign immunity are claims of arising out of libel or slander, 28 U.S.C. § 2680(h), including defamation claims, *Gardner v. United States*, 341 U.S. App. D.C. 378, 213 F.3d 735, 738 n.1 (D.C. Cir. 2000). Accordingly, the plaintiff's defamation claim is barred. <u>Because the plaintiff's false light invasion of privacy claim arose out of the conduct on which the defamation claim is based</u> . . . -- that claim is barred as well, *Koch v. United States*, 209 F. Supp. 2d 89, 94-95 (D.D.C. 2002) (holding that "if a plaintiff bases a claim on conduct that does not constitute a claim arising out of a tort specified in § 2680(h), then the plaintiff's suit is not barred") (*quoting Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

*Greene v. Nguyen*, 2005 U.S. Dist. LEXIS 19984 (D.D.C., Sept. 7, 2005) (emphasis added).

The courts have interpreted the corresponding language in the FSIA in the same way.  In an FSIA case, *Kozorowski v. Russian Federation*, 1997 U.S. App. LEXIS 26266 (9th Cir., Sept. 19, 1997), the Ninth Circuit observed that "[b]oth the FTCA and the FSIA's 'libel' exception prohibit 'any claim arising out of' certain enumerated torts. In interpreting the 'arising out of' language in the FTCA, we have held that an emotional distress claim 'arises out of' an excluded tort if that tort must be proved for the underlying claim to succeed." It then ruled that an emotional distress claim that arose out of misrepresentation and deceit claims – claims specifically enumerated in 28 U.S.C. § 1605(a)(5)(B) –was also barred by § 1605(a)(5)(B). *See also Gregorian v. Izvestia*, 658 F. Supp. 1224, 1233-34 (C.D. Cal. 1987), *aff'd in part and rev'd in part*, 871 F.2d 1515 (9th Cir.), *cert.*

9

*denied*, 493 U.S. 891 (1989). For the same reasons, plaintiffs' "false light" claims are barred in this case, along with their libel claims.[6]

       b.     The Entire Tort Did Not Occur in the United States.

     There is a second, independent reason why plaintiffs' claims do not fit within the exception to immunity in 28 U.S.C. § 1605(a)(5): In order for an alleged tort to fit within this exception, the "entire tort" – the act constituting the tort, and the injury suffered – must occur in the territory of the United States. *Asociacion de Reclamantes v United Mexican States*, 735 F.2d 1517, 1525 (D.C. Cir. 1984) (Scalia, J.); *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984). *See also Frolova v. USSR*, 761 F.2d 370, 379 (7th Cir. 1985); *Kozorowski v. Russian Federation*, 1997 U.S. App. LEXIS 26266 (9th Cir., Sept. 19, 1997) (injury and act or conduct that causes the injury must both occur in the United States). The legislative history of the FSIA clearly states that "the tortious act or omission must occur within the jurisdiction of the United States . . . ." H.R. Rep. No. 1487 at 20-21, *reprinted in* 1976 U.S. Code Cong. & Ad. News at 6619; S. Rep. No. 1310 at 20.

     In this case, plaintiffs complain about allegedly defamatory statements that were printed in newspapers distributed in China, and posted on the Internet in China and presumably viewed in the United States. Complaint ¶¶ 21-24. This places the alleged tortious acts in China, not in the United States.[7]

---

[6]    Likewise, the "discretionary function" exception found in 28 U.S.C. § 1605(a)(5)(A) also bars the plaintiffs' claims.

[7]    In this case the alleged defamatory statements were posted on the *People's Daily* website in Beijing, and did not appear in hard copies of the *Renmin Ribao*. See Complaint at ¶¶ 21-24. The hard-copy newspaper in which the statements also appeared, *Global Times*, is not distributed in the United States. Thus, this case differs from the *Wang Bingzhang* case in that in *Wang Bingzhang*, the alleged defamatory statements did appear in hard copies of the *People's Daily* that were distributed in the District of Columbia and elsewhere in the United States. *See Wang Bingzhang* complaint (Attachment 2) at ¶ 23.

First of all, even if (contrary to fact) the alleged defamatory statements had appeared in "hard copies" of *Renmin Ribao* and those "hard copies" had been mailed to the District of Columbia, the act of defamation would <u>not</u> have occurred in the District of Columbia, even if the injury did. In *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986) (Bork, J.), a libel case, the Circuit Court agreed with this Court's ruling that "the 'act' which gave rise to the injury -- the printing and mailing of the newspaper -- occurred outside the District." *Id.* at 220. *See also McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996).

Second, it is also very clear that the posting of an allegedly defamatory statement on a website in China, outside the District of Columbia, is <u>not</u> an act occurring in the District of Columbia (or anyplace else in the United States), even if the person claiming to have been harmed is located in the District of Columbia, and even if posting has been accessed and viewed by a person situated in the District of Columbia. The tortious act is the posting by the alleged tortfeasor, not the viewing by a reader. District of Columbia caselaw demonstrates this.

In *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998), defamatory statements appearing in the "Drudge Report" on the Internet were written, published and transmitted by the defendant Drudge from his computer located in Los Angeles, California. The injury caused by Drudge's act of transmitting the report was suffered by the plaintiffs in the District of Columbia, as they lived in the District. *See id.* at 53, 46. This Court examined whether personal jurisdiction existed under the D.C. long-arm statute, which provides:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> . . .
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

D.C. Code § 13-423(a).

If the posting in Los Angeles of an allegedly defamatory statement to the Internet could be viewed as "an act in the District of Columbia" by virtue of having been accessed by someone in the District of Columbia, the Court in *Drudge* would have analyzed whether jurisdiction existed under D.C. Code § 13-423(a)(3) – "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." The Court did not do that. Instead, it observed that "[t]he only provision of the District of Columbia long-arm statute that is relevant to this case is Section 13-423(a)(4)." 992 F. Supp. at 53 (emphasis added). Section 13-423(a)(4) confers jurisdiction for "tortious injury in the District of Columbia by an act of omission outside the District of Columbia" (emphasis added), provided other conditions are satisfied. Thus, the *Drudge* case shows that the posting in Beijing of an allegedly defamatory statement to the Internet is not an act in the District of Columbia, even if the posting is viewed in the District of Columbia, and even if the resulting injury is suffered in the District of Columbia. Consequently, the posting of the allegedly defamatory statements to the *Renmin Ribao* website was not an act in the District of Columbia, or for that matter an act anywhere else in the United States. For this it follows that jurisdiction does not exist under the FSIA's tort-in-the-United States exception to immunity, 28 U.S.C. § 1605(a)(5).[8]

---

[8]     To be clear, this is not a point about whether D.C. Code § 13-423(a) confers personal jurisdiction or not in this case. When the FSIA applies, its jurisdictional rules, which are contained in 28 U.S.C. § 1605, pre-empt all otherwise applicable jurisdictional rules. Here, reference is made to the caselaw under D.C. Code § 13-423(a) to establish a different point, that the posting outside the District of Columbia of a

Likewise, in *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265 (D.D.C. 1998), plaintiffs maintained "that there is jurisdiction over [the defendant] in the District of Columbia because [the defendant] published a defamatory statement on America On Line accusing [a plaintiff] of patent infringement that was available to AOL subscribers in the District of Columbia." 989 F. Supp. at 270. This Court concluded that the posting was "not an act purposefully or foreseeably aimed at the District of Columbia," *id.* at 272, much less an act <u>in</u> the District of Columbia. Thus, *Drudge* and *Mallinckrodt* confirm that the posting in Location X of an alleged defamatory statement does <u>not</u> become an act occurring in Location Y by being viewed by someone situated in Location Y, or by the alleged injury occurring in Location Y.[9]

Consequently, the tortious acts alleged here did not occur in the United States, and thus fail to satisfy the "entire tort" rule. This is an additional reason why no jurisdiction exists under 28 U.S.C. § 1605(a)(5).

> 2.    The Commercial Activities Exception Does Not Apply.

The immunity in 28 U.S.C. § 1605(a)(5)(B), covering claims "arising out of . . . libel," should be understood to confer a blanket immunity with respect to such cases against foreign states. It should not be possible to bring such a claim under another of the FSIA's exceptions to immunity, such as the "commercial activities" exception, 28 U.S.C. § 1605(a)(2). Congress "would not go to the trouble of specifically excluding defamation claims from the FSIA's abrogation of immunity in one part of the statute, yet . . . implicitly permit such claims elsewhere in the statute." *Bryks v.*

---

statement that can be accessed on the Internet by someone situated in the District of Columbia, is not "an act in the District of Columbia."

[9]    As it happens, no injury was suffered in the District of Columbia by plaintiffs in this case. Neither plaintiff resides in the District of Columbia. *See* Complaint ¶¶ 8-9. *See Kline v. Williams*, 2006 U.S. Dist. LEXIS 23263 (D.D.C. 2006).

*Canadian Broadcasting Corp.*, 906 F. Supp. 204, 209 (S.D.N.Y. 1995). Moreover, the "exceptions to the exception" in 28 U.S.C. § 1605(a)(5)(B) also preserve immunity for claims arising out of "interference with contract rights," and "[i]t is difficult to conceive of a claim for 'interference with contract rights' that does not involve commercial activity. Accordingly, it would be pointless to provide that such claims are barred only in noncommercial settings." *Id.* Moreover, it is unlikely that Congress would have enacted a "double standard," whereby foreign sovereigns could be held liable for libel in circumstances where the United States could not be. *Id.* After all, the FSIA's "exception to the exception" was taken directly from the act governing the tort liability of the United States, the FTCA.

However, it is not currently the law in this Circuit that § 1605(a)(5)(B) confers a blanket immunity with respect to all possible claims against foreign states arising out of libel. This Circuit's current position is based on the fact that the tort exception, § 1605(a)(5), contains a proviso, "not otherwise encompassed in paragraph (2) [the commercial activities exception] above." This Circuit has ruled that this proviso "makes clear that paragraph (5) and its defamation exception are inapplicable to tort cases based upon commercial activity." *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 35 (D.C. Cir. 2000) (emphasis added). Thus, **if** this tort case were based upon commercial activity, then under this Circuit's interpretation immunity would not exist (assuming that other requirements of the "commercial activities" exception were satisfied).

However, this case is clearly not based upon[10] commercial activity, or even "substantively connected" or "causally linked" to such activity. *See Garb v. Republic of Poland*, 440 F.3d 579, 587-588 (2d Cir. 2006); *Hanil Bank v. Pt Bank Negara Indonesia (Persero)*, 148 F.3d 127, 131 (2d

---

[10]    The Supreme Court has explained that the phrase "based upon" in § 1605 of the FSIA has the narrow and specific meaning of "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993).

Cir. 1998); *Adler v. Fed. Republic of Nigeria,* 107 F.3d 720, 726 (9th Cir 1997). *See also* H.R. Rep. No. 1487 at 20-21, *reprinted in* 1976 U.S. Code Cong. & Ad. News at 6618 (third clause of § 1605(a)(2) was intended to "embrace *commercial conduct* abroad having direct effects in the United States") (emphasis added); S. Rep. No. 1310 at 19 (same).

Similar claims about jurisdiction under the "commercial activities" exception to immunity were made about alleged libelous statements, and rejected, in *Yessenin-Volpin v. Novosti Press Agency*, 443 F. Supp. 849 (S.D.N.Y. 1978). That case involved allegations of libel appearing in publications of the Soviet Union, including one that was an organ of the Central Committee of the Communist Party of the Soviet Union. *See* 443 F. Supp. at 856. Analyzing the activities on which the claim was based, the court in *Yessenin-Volpin* observed that the FSIA "clearly contemplates that a given entity may at some times engage in commercial activities, on which it would not be immune, and at other times take actions 'whose essential nature is public or governmental,' on which it would be immune." *Id.* at 855. The court then found that

> by collaborating in the publication of stories in these journals, [the defendant] Novosti, as well as TASS, was engaged not in "commercial activity" but in acts of intra-governmental cooperation of a type which apparently constitutes much of Novosti's (and presumably more of TASS's) activity. . . . . . [T]he net result of this cooperative relationship was the publication of articles which, under the circumstances, must be regarded as official commentary of the Soviet government. Whether or not the Court admires the tone of such commentary, it cannot be gainsaid that it constitutes "an activity whose essential nature is public or governmental."

*Id.* at 856.

As stated in the Chinese Government Position, *Renmin Ribao*'s "main functions include releasing State and government documents, news and government views and publicizing information of the State." Thus, as in *Yessenin-Volpin*, the "essential nature" of *Renmin Ribao*'s commentary is "public or governmental."

Likewise, in *Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir. 1989), the Ninth Circuit found that the Soviet newspaper *Izvestia* was immune from suit for alleged libelous statements, even though those statements actually did have some arguable relation to commercial activity. The publication in question accused the plaintiff of smuggling, bribery and unethical business practices. The plaintiff maintained that this constituted the commercial tort of "trade libel," and fell within the "commercial activities" exception, § 1605(a)(2). The United States, appearing as *amicus curiae*, pointed out, however, that *Izvestia*'s "'writing and publishing of articles reporting or commenting on events' constitute 'sovereign or governmental activities,'" and the newspaper "'*Izvestia* is the voice of an official Soviet agency, [and] the determination of its contents can be carried out only by a governmental entity; thus, publishing a particular article in *Izvestia* is a sovereign, governmental function.'" 871 F.2d at 1522 (*quoting* U.S. submission). Consequently, the court concluded that "[t]he governmental nature of *Izvestia*'s publication and distribution defeats plaintiffs' argument that its sale [*i.e.*, the act of selling the newspaper *Izvestia*] is sufficient to afford jurisdiction under section 1605(a)(2)," the commercial activities exception. *Id.*

Applicability of the "commercial activities" exception in this case is <u>even</u> <u>more</u> <u>remote</u> than in *Gregorian* or *Yessenin-Volpin*. Not only is the defendant *Renmin Ribao* a "foreign state" engaged in "an activity whose essential nature is public or governmental," *Yessenin-Volpin*, 443 F. Supp. at 856, but also this case has nothing to do with commercial activities. It has to do entirely with <u>political</u> matters -- the plaintiffs are not complaining about any commercial activity or any effect on commercial activity; they are complaining that the defendants in this case have "falsely held out [plaintiffs] to be enemies of the Chinese people working for Taiwan authorities intent on severing Taiwan from Mainland China." Complaint ¶ 39; *see also id.* ¶¶ 45, 48. This clearly has

to do with matters of important public or governmental concern, and has nothing to do with commercial activity.

IV.    LIU AICHENG IS IMMUNE.

Plaintiffs also named the former chief correspondent in Washington, DC of *People's Daily*, as a defendant. Liu Aicheng, as an agent of the "foreign state" *Renmin Ribao*, enjoys the same immunity as *Renmin Ribao*. "Individuals acting in their official capacities are considered 'agencies or instrumentalities of a foreign state' . . . ." *Jungquist v. Sheikh Sultan bin Khalifa al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997). *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996); *Doe v. Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2006). An official-capacity claim against a government official is in substance a claim against the government itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). There is no allegation or intimation anywhere in the complaint that Liu Aicheng was acting in anything other than his official capacity.[11] Indeed, there are simply no factual allegations <u>at all</u> regarding Liu Aicheng, other than that he "leads and directs the Washington Bureau of the People's Daily." Complaint ¶ 5. The complaint sets forth no facts whatsoever concerning any specific involvement in or responsibility for the allegedly defamatory statements of which plaintiffs complain. Liu Aicheng, like his employer *Renmin Ribao*, is immune from suit under the FSIA.

---

[11]    Moreover, the concept of a person acting in his or her official capacity must be given a broad interpretation in FSIA cases, as it is given to U.S. officials in Federal Tort Claims Act cases. *Cf. Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006) (alleged torture and inhumane treatment was a "foreseeable consequence" of the employment of Donald Rumsfeld and the other defendant officials in their respective positions, and therefore fell within the scope of their office or employment under the Federal Tort Claims Act). The drafters of the FSIA borrowed the phrase, "while acting within the scope of his office or employment," found in 28 U.S.C. § 1605(a)(5) of the FSIA, directly from the act that was applicable in the *Rasul* case -- the Federal Tort Claims Act. *See* H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6620. Hence the rationales of cases such as *Rasul*, *Bancoult v. McNamara*, 370 F. Supp. 2d 1 (D.D.C. 2004), *aff'd*, 445 F.3d 427 (D.C. Cir. 2006), and *Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005), *cert. denied*, 164 L. Ed. 2d 515 (2006), are applicable in FSIA cases.

V.    NO JURISDICTION EXISTS OVER *GLOBAL TIMES.*

Plaintiffs also named *Global Times* as a defendant.  Even without regard to the question of immunity, it is clear that *Global Times* has had no affiliating contacts whatsoever with the District of Columbia.  As noted in the Chinese Government Position, the *Global Times* is a separate legal person from *Renmin Ribao*, and the newspaper *Global Times* is circulated only in China:

> The *Global Times* is an independent corporate [person] registered in China in accordance with Chinese laws.  It is registered at the Chaoyang branch of the Beijing Administration of Industry and Commerce as *Global Times*, and its registration number is 1101051232686.  The *Global Times* and the *People's Daily* are separate entities.  The *Global Times* is independent in operation, tax payment and assuming legal responsibility.  The newspaper is circulated only in China and is not sold overseas.[12]

Hence plaintiffs' implicit claim that *Global Times* has some affiliating contacts with the District of Columbia is false.  It likewise follows that, even assuming that plaintiffs actually made service on the Washington, D.C. office of *Renmin Ribao*, such service would not constitute

---

[12]    A copy of the *Global Times'* registration certificate, 1101051232686, along with an English translation, is attached as Attachment 5.

service on the entirely different legal person, *Global Times*, which has no presence in Washington, DC.[13] Consequently, no jurisdiction exists over *Global Times*.

The plaintiffs appear to have a "one ball of wax" theory concerning the juridically separate entities they have sued – as if they were not separate but were just "one ball of wax." *See* plaintiffs' return of service (Document 2 on the docket) (alleging that defendants have an "interlocking directorate"). This is contrary to the U.S. jurisprudence that the separate juridical identities of different agencies and instrumentalities from each other and from the foreign state must ordinarily be respected. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 628 (1983); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 446 (D.C. Cir. 1990). However, even if the rule of *Bancec* were ignored and the defendants all collapsed into one mega-defendant, jurisdiction over *Global Times* would still be unavailing, for the simple reason that *Global Times* would then clearly partake of the sovereign immunity enjoyed by the other defendants, as outlined above.

## CONCLUSION

Not only does Rule 12(h)(3) mandate dismissal when the Court lacks subject matter jurisdiction, but the Court clearly has an independent obligation to assure itself that it possesses subject-matter jurisdiction in FSIA cases: "[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the Act." *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 494 n.20 (1983). In this

---

[13]    Moreover, even if, contrary to fact, *Global Times* had some presence in Washington, D.C., that would not necessarily subject it to jurisdiction. *See Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986) (Bork, J.) ("The 'newsgathering exception' to paragraph (a) (4) of the long-arm statute was announced by this court in *Neely v. Philadelphia Inquirer Co.*, 62 F.2d 873 (D.C. Cir. 1932), and provides that 'the mere collection of news material here for use in subsequent publication elsewhere . . . is not a doing of business here, within the meaning of the statute.'").

case, the plaintiffs in this case are attempting to maintain a case against defendants who are immune. In these circumstances, the Court must, the Chinese Society of Private International Law respectfully submits, dismiss this case.

      Dismissal will advance the proper interpretation of the law of head-of-state immunity and foreign sovereign immunity. It also will advance relations between China and the United States, two of the major powers in the world today, which have many shared interests in the international arena, and whose continued cooperation and mutual respect is of great importance in world affairs. A complaint that does not meet the standards of U.S. law for the removal of immunity (not to mention not meeting the standards of international law) should not be allowed to derail the continuing mutually beneficial development of Sino-U.S. relations. The maintenance of this lawsuit is as great an irritant to those relations, as the maintenance of a lawsuit in a Chinese court against a United States Government agency or commission for its Internet content available in China would be. The Complaint should be dismissed with prejudice as soon as possible.

Respectfully submitted,

Chinese Society of Private International Law

Dated: December 4, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Wang Dan and Wang Juntao,                )
                                         )
                  Plaintiffs,            )
                                         )
         v.                              )    Case No. 1: 05CV01788
                                         )
Hu Jintao, Liu Aicheng,                  )
*People's Daily* and *Global Times*,     )
                                         )
                                         )
                  Defendants.            )

## ORDER

This matter came before the court on the suggestion by the Chinese Society of Private International Law, pursuant to Fed. R. Civ. P. 12(h)(3), that the Court lacks jurisdiction over the defendants. On consideration of the suggestion and of the pleadings and other papers relevant to this suggestion, the Court determines that jurisdiction over the defendants does not exist. Therefore,

IT IS HEREBY ORDERED that the complaint is DISMISSED as to all defendants for lack of jurisdiction.

_____

R.M. Urbina
United States District Court Judge

Dated: _____, 2006

<u>Certificate of Service</u>

I hereby certify that on <u>December 4</u>, 2006, I caused copies of this suggestion of lack of subject-matter jurisdiction to be mailed: by international air mail, to John Hemenway, Esq., 4816 Rodman Place, NW, Washington, DC 20016, USA, and to Jonathan Eli Zimmerman, Esq., U.S. Department of Justice, Civil Division, Federal Programs Branch, P. O. Box 883, 20 Massachusetts Avenue, N.W., Washington, DC 20530, USA; and by domestic first-class mail, to the Honorable Hu Jintao, Secretary General, Chinese Communist Party, to *Renmin Ribao* ("*People's Daily*"), to Liu Aicheng, and to *Huanchiu Shibao* ("*Global Times*").

